DANIEL J. MYERS, *Admr. vs.* EDWARD J. MYERS.

SAME *vs.* MARY MYERS.

JULY 24, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. These two actions in assumpsit for money had and received were brought by the administrator of the estate of Edward Myers, deceased, to recover from the defendants the proceeds of certain bank accounts. The cases were tried together in the superior court and resulted in a verdict of the jury for the defendant in each case. The trial justice later denied the plaintiff's motion for a new trial in each case; and the cases are before us upon the plaintiff's bills of exceptions to certain rulings of the trial justice during the trial, to a portion of the charge, and to the refusal of the plaintiff's single request to charge. As the bills of exceptions raise identical questions, we shall consider them as if there were only one.

The actions were brought to recover the proceeds of two bank accounts which the defendants claimed had been given to Edward J. Myers by plaintiff's intestate during his lifetime. The first account was opened by plaintiff's intestate in the Industrial Trust Company on July 22, 1920 and was transferred by him on May 1, 1935, into a joint account standing in the names of himself or Edward J. Myers, or the survivor. This account was closed out by the defendant Edward J. Myers on October 9, 1935 by withdrawal and transfer of the balance of $2598.34 into an account standing in his own name.

The other account was opened by plaintiff's intestate in the Rhode Island Hospital Trust Company on June 22, 1934, in the joint names of himself or the defendant Mary Myers, and was payable to either or to the survivor. On October 10, 1935 this account was closed out by a withdrawal made by the defendant Edward J. Myers upon the signed order of defendant Mary Myers, and the balance of $4694.83 was deposited by Edward J. Myers in his own account.

The evidence discloses that Edward Myers, the original owner, who had opened both of these accounts, died intestate October 12, 1935 at the age of seventy-five years. He had lived for many years with his brother Patrick Myers and the latter's wife Mary and son Edward J. Myers, the last two being the defendants here. Upon the death of Patrick, plaintiff's intestate continued to live for many more years with the defendants until he died.

During the latter portion of his life, plaintiff's intestate had been attended and assisted by his nephew Edward J. Myers in the collection of rents and the care of his property. The plaintiff was a brother of the deceased and was duly appointed as administrator of his estate, and there were no other brothers or sisters in this country. The defendants were closer in their associations with the deceased than any of his other relatives, including the plaintiff.

In May of 1935 plaintiff's intestate entered a hospital to undergo an operation and, before doing so, he transferred his account in the Industrial Trust Company to a joint account in the names of himself and defendant Edward J. Myers. At the same time he left his other real estate and business affairs to be cared for by his nephew. The other bank account was already a joint account in the names of the plaintiff's intestate and the defendant Mary Myers.

Plaintiff's intestate recovered sufficiently from the operation to return to the home of the defendants where he re-

ceived nursing and care, as well as assistance from his nephew in conducting his business affairs. In the latter part of September 1935 the plaintiff's intestate and everybody else seemed to think he was recovering. He then sent for his attorney to consult him concerning the making of a will. At the time of the first conference with his attorney on September 30, 1935 he happened to be in bed, because he had retired early in the evening. When plaintiff's intestate inquired substantially if the attorney could guarantee to draw a will that would not be contested, and was informed to the contrary, he finally decided to make a present gift of his property to his nephew, the defendant Edward J. Myers.

The latter was present in the house at this time as was his mother; but only the plaintiff's intestate and his attorney were present in the bedroom during this conference up to this time. Later on, upon request, the defendant Edward J. Myers brought the bankbooks and other documents into the bedroom and delivered them to plaintiff's intestate. Then, in the presence of the attorney, plaintiff's intestate personally handed the bankbooks over to the defendant Edward J. Myers, saying substantially that he was then making a gift of the proceeds in both of these accounts to his nephew, because he, the nephew, would know how to take care of them.

On the next evening the attorney returned with certain transfers of mortgages and a deed which he had prepared in accordance with the instructions given to him by plaintiff's intestate on the previous evening. A similar procedure was followed except that the plaintiff's intestate was not in bed and the business was transacted in the front room. All the testimony shows that he was of sound mind at that time, though somewhat weakened physically by the nature of his illness. There was corroborative evidence of the fact of the attorney's visit and there is no evidence of any undue influence on the occasion of September 30 or October 1, when

the defendants claim that the bankbooks and other property were intended to be given and were actually given by the plaintiff's intestate to the defendant Edward J. Myers. Some few days thereafter, on October 7, the plaintiff's intestate suffered a shock from which he later went into a coma and died on October 12, 1935. When it accidentally became known to the attorney that the nephew had not withdrawn the money immediately after the gift, this was then done on October 9 and 10 upon the attorney's advice.

The plaintiff's bill of exceptions contains five separate exceptions, the first of which was not established on a petition to establish the truth of these exceptions. The third exception was neither briefed nor argued and is deemed to be waived. Therefore, only the second, fourth and fifth exceptions are before us. The second exception is to the exclusion of a question relating to the size of a fee that the defendant's attorney had been paid in an entirely different case, namely, the probate of the estate of Patrick Myers. By this, the plaintiff sought to prove bias or interest on the part of the defendant's attorney, who was also a witness. There was no specific offer of proof and we fail in any event to see any possible prejudice to plaintiff from the exclusion of this testimony. Therefore the second exception is overruled.

The fourth exception is to the refusal of the trial justice to grant the plaintiff's request to charge, as follows: "If you find from the facts that the deceased, Edward Myers, transferred his bank accounts to his nephew so that his nephew could take care of Edward Myers' property and that the purpose of the transfer was not to make a gift to the nephew, you must find for the plaintiff." Assuming that this request was made in time, according to the rules of court, it would have been confusing and erroneous if given. Admittedly, one account was opened in June 1934 and the other was transferred in May 1935. The defendants' claim of gift was

based entirely on the transaction of September 30, 1935. There is no evidence, relating to that time, that the gifts were made for the purpose assumed by the language of the request; and no evidence that they were not intended by plaintiff's intestate as a gift to defendant Edward J. Myers. It is not proper to grant a request that has no basis in evidence, or that would only confuse the jury. *Di Sandro* v. *Providence Gas Co.*, 40 R. I. 551; *Providence Ice Co.* v. *Bowen*, 44 R. I. 173. It was not error to refuse this request in view of the evidence in the case, and the fourth exception is overruled.

By his fifth exception the plaintiff contends that the trial justice erred in giving that portion of the charge wherein he instructed the jury that there had been "a valid gift". The plaintiff contends that this portion of the charge took from the jury's consideration the issue of whether in fact there ever was any delivery or gift and limited the jury to the sole question of whether or not the alleged gift was obtained by the exercise of undue influence upon the donor.

We find no place in the charge where the trial justice actually said that there had been "a valid gift". However, we do find language which substantially supports the plaintiff's contention that the charge of the court unquestionably limited the jury to a consideration of whether or not the alleged gift was obtained through the exercise of undue influence. If there were evidence that there had been no physical delivery of the bankbooks by the plaintiff's intestate to the defendant Edward J. Myers on September 30, 1935 and no expression of his donative intent, the plaintiff's contention would have to be sustained.

But, upon consideration of the transcript of evidence, we have found no evidence or legitimate inferences therefrom which would justify a conclusion that there was no delivery of the bankbooks to the defendant Edward J. Myers on Sep-

tember 30, 1935 by the deceased, or that there was no expression of his donative intent. All of the evidence *as to that occasion* is uncontradicted and supports the conclusion that the plaintiff's intestate at that time was mentally competent; that he intended to deliver, and delivered, to his nephew Edward J. Myers, in the presence of the attorney, the bankbooks in question; and that he then and there expressed his intention to part with dominion over those books and proceeds of the accounts.

The plaintiff's confusion is traceable to inferences from evidence that refers to alleged "transfers" of the bankbooks in *June 1934* and *May 1935*, and to the later condition of the donor after October 7, and when the money was withdrawn. Such testimony and inferences relate to entirely different occasions from the transaction on *September 30, 1935,* at which time the question of gift must have been decided.

A consideration of the transcript leads us to the conclusion that reasonable minds could not differ upon the evidence as to whether the bankbooks were given over by plaintiff's intestate to the defendant Edward J. Myers with the expressed intent of the plaintiff's intestate to part with dominion thereof. In our opinion, the trial justice was not in error in giving the portion of the charge referred to by the plaintiff's fifth exception, and this exception is, therefore, overruled.

All of the plaintiff's exceptions are overruled and each case is remitted to the superior court for entry of judgment on the verdict.

*Hartigan, Mullen & Roberts, John E. Mullen, Wilfrid E. McKenna,* for plaintiff.

*Fergus J. McOsker,* for defendant.